UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
EDWARD F. GRODEN, as EXECUTIVE      )
DIRECTOR of the NEW ENGLAND         )
TEAMSTERS AND TRUCKING INDUSTRY     )
PENSION FUND,                       )
                Plaintiff,          )
                                    )
v.                                  )    Civil Action
                                    )    No. 14-14224-PBS
J. TARTAGLIA TRUCKING, INC.,        )
TARTAGLIA TRUCKING CO., INC.,       )
TRI CITY PETROLEUM INC., and        )
JESSE TARTAGLIA,                    )
                                    )
                Defendants.         )
_____ )

**MEMORANDUM AND ORDER**

January 27, 2017

Saris, C.J.

**INTRODUCTION**

This is an action for the collection of withdrawal liability under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). Edward Groden[1] brought suit on behalf of the New England Teamsters and Trucking Industry Pension Fund

---

[1] The named plaintiff at the commencement of the suit was Charles Langone, the fund manager of the New England Teamsters and Trucking Industry Pension Fund. Upon Langone's retirement, Groden, the Executive Director of the Fund, was substituted as plaintiff.

1

("Fund") to collect from J. Tartaglia Trucking, Inc. ("JTT"). Groden also names as defendants Tartaglia Trucking Co., Inc. ("TTC") and Tri City Petroleum, Inc. ("Tri City") on the basis that they are businesses under common control with JTT and therefore jointly and severally liable for the payment of withdrawal liability.

The Fund moves for summary judgment on Counts I, II, and IV and moves to dismiss the remaining counts, namely Counts III, V, VI, and VII. The Fund's motion (Docket No. 50) is **ALLOWED**.

## BACKGROUND

### I. Factual Background

The following facts are undisputed except where stated.

The Fund is an "employment benefit plan" within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3), and a "multiemployer plan" within the meaning of section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A). Pursuant to the Fund's Agreement and Declaration of Trust ("Trust Agreement"), the Fund receives pension contributions from participating employers and provides pension benefits to eligible employees of those employers. Contributing employers are obligated to pay into the Fund pursuant to collective bargaining agreements ("CBAs") between the

employers and the unions participating in the Fund. Payments into the Fund must be accompanied by monthly remittance reports identifying each employee performing work within the scope of the CBA, the number of hours worked, and the hourly contribution rate.

JTT was a Rhode Island corporation in the business of hauling dirt, gravel, and asphalt. The sole shareholder was Jesse Tartaglia.

JTT began participating in the Fund in 1988. JTT's obligation to contribute to the Fund arose from a series of CBAs between JTT and Teamster Local Union 251. The last CBA that JTT signed expired on April 30, 2003. JTT states that it did not enter into any subsequent CBA. Nonetheless, JTT continued to make contributions to the Fund on behalf of its employees until July 2009, when its last union employee retired.[2] The Fund continued to award pension credit and benefits to the employees of JTT until 2009 based upon the

---

[2] Even after 2003, the Fund continued to provide JTT with preprinted remittance reports for each month.

One of the preprinted fields of the remittance reports was the hourly contribution rate. The contribution rate increased every year that JTT was signed onto the CBA and, after 2003, the contribution rate continued to increase annually in the statewide Rhode Island construction agreement. The preprinted remittance reports reflected those annual increases even after 2003, when JTT ceased to be a CBA signatory. The rate was $4.21 per hour at the time the 2000–2003 CBA expired. The rate rose to $5.26 per hour by 2008.

contributions paid and the hours of service reported by JTT. Between August 2009 and August 2013, JTT submitted "no hours" remittance reports to the Fund.

On December 10, 2013, Jesse Tartaglia notified the Fund that JTT would no longer contribute to the Fund because its last union employee retired in July 2009.

On January 6, 2014, the Fund notified JTT of its withdrawal from the Fund and demanded payment of JTT's proportionate share of the Fund's unfunded vested benefit liability. See 29 U.S.C. § 1399(b)(1). The notice determined a withdrawal date of August 1, 2009 and calculated an unpaid withdrawal liability of $544,308 based on contributions paid from October 1998 to September 2008.[3]

In letters dated March 13 and 17, 2014, JTT requested review of the withdrawal liability assessment. See id. § 1399(b)(2)(A).

In a letter dated April 7, 2014, the Fund responded to the request for review by confirming the amount of the withdrawal liability. See id. § 1399(b)(2)(B). The letter informed JTT that "[i]f you disagree with this determination, you have the right to dispute the decision

---

[3] A worksheet attached to the Notice explains the calculation, which is based on the formula in Article XV of the Fund's Rules and Regulations.

4

in accordance with the attached Article XV of the Fund's Rules and Regulations."

In a letter dated April 14, 2014, JTT requested further review of the withdrawal liability assessment on the basis of the construction industry exemption in ERISA section 4203(b), 29 U.S.C. § 1383(b).

In a letter dated July 7, 2014, the Fund replied with a determination that JTT was ineligible for the construction industry exemption.

The parties agree that since that time, JTT has not made any payments or filed a request for arbitration.

TTC is a corporation in the business of freight trucking. Jesse Tartaglia was the sole shareholder of TTC at the time of JTT's withdrawal from the Fund.

Tri City is a corporation in the oil industry. At the time of JTT's withdrawal from the Fund, ownership of Tri City was split evenly between Jesse Tartaglia and his wife, Susan Tartaglia.

II. **Procedural Background**

The operative complaint is the First Amended Complaint, filed by the Fund on April 21, 2015. There are seven counts: (1) withdrawal liability against JTT; (2) withdrawal liability against TTC as a business under common control; (3) withdrawal liability against TTC as an alter

5

ego of JTT; (4) withdrawal liability against Tri City as a business under common control; (5) failure to complete a required withdrawal questionnaire by Jesse Tartaglia, in violation of section 4219(a) of ERISA, 29 U.S.C. § 1399(a); (6) failure to pay pension contributions by JTT; (7) failure to pay pension contributions by TTC as an alter ego of JTT.

The Fund moved for summary judgment on Counts I, II, and IV. The Fund also moved to dismiss the remaining counts, Counts III, V, VI, and VII.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To succeed on a motion for summary judgment, the moving party must demonstrate that there is an "absence of evidence to support the nonmoving party's case." Sands v. Ridefilm Corp., 212 F.3d 657, 661 (1st Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once such a showing is made, "the burden shifts to the nonmoving party, who must, with respect to each issue on which she would bear the burden of proof at trial," come forward with facts that demonstrate a genuine issue of material fact.

Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010) (citing Celotex, 477 U.S. at 324).

"A genuine issue exists where a reasonable jury could resolve the point in favor of the nonmoving party." Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009). "A party cannot survive summary judgment simply by articulating conclusions the jury might imaginably reach; it must point to evidence that would support those conclusions." Packgen v. BP Expl. & Prod., Inc., 754 F.3d 61, 67 (1st Cir. 2014). A material fact is "one that has the potential of affecting the outcome of the case." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

In its review of the evidence, the Court must "examin[e] the facts in the light most favorable to the nonmoving party" and draw all reasonable inferences in its favor to "determine if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Sands, 212 F.3d at 661. The Court must ignore "conclusory allegations, improbable inferences, and unsupported speculation" at the summary judgment stage. Chiang v. Verizon New England Inc., 595 F.3d 26, 30 (1st Cir. 2010). "Ultimately, credibility determinations, the weighing of the evidence, and the drawing of legitimate

7

inferences from the facts are jury functions, not those of a judge." Sensing v. Outback Steakhouse of Fla., LLC, 575 F.3d 145, 163 (1st Cir. 2009).

## II. **MPPAA/ERISA Withdrawal Liability**

"The MPPAA was enacted in response to a crisis facing multi-employer pension plans from which employers had withdrawn in increasing numbers, leaving the plans without adequate funds to pay vested employee benefits." Giroux Bros. Transp. v. New England Teamsters & Trucking Indus. Pension Fund, 73 F.3d 1, 2–3 (1st Cir. 1996). "The MPPAA was enacted by Congress to protect the viability of defined pension benefit plans, to create a disincentive for employers to withdraw from multiemployer plans, and also to provide a means of recouping a fund's unfunded liabilities. As such, the MPPAA requires employers withdrawing from a multiemployer plan to pay their proportionate share of the pension fund's vested but unfunded benefits." Sun Capital Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund, 724 F.3d 129, 138 (1st Cir. 2013). A pension plan's unfunded vested liability is "the difference between the present value of vested benefits and the current value of the plan's assets." Pension Ben. Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 725 (1984); see also 29 U.S.C. §§ 1381, 1391. An employer completely withdraws from a

multiemployer plan when it "permanently ceases to have an obligation to contribute under the plan" or "permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a).

"As soon as practicable after an employer's complete or partial withdrawal," a pension plan must notify the employer of the amount of the withdrawal liability and demand payment. Id. § 1399(b)(1). No later than ninety days after receiving that notice, the employer may ask the pension plan to review its determination of the withdrawal liability. Id. § 1399(b)(2)(A). "After a reasonable review of any matter raised," the pension plan must notify the employer of its decision. Id. § 1399(b)(2)(B).

Any dispute about "a determination made under [28 U.S.C. § 1381] through [28 U.S.C. § 1399]" is subject to mandatory arbitration. Id. at § 1401(a)(1). The arbitration must be initiated within sixty days of the earlier of (A) a plan's notification to the employer of its decision on a request for review or (B) 120 days after the employer's request for review. Id.

If no arbitration is initiated, "the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of

competent jurisdiction for collection." Id. at
§ 1401(b)(1).

## III. **Analysis**

It is undisputed that none of the defendants ever sought arbitration or made a payment on the withdrawal liability. The Fund calculates the arbitration filing deadline as having been June 8, 2014, based on JTT's April 9, 2014 receipt of the Fund's response to its request for review. See 29 U.S.C. § 1401(a)(1)(A). The Fund argues that at that point, the amount of the withdrawal liability became "due and owing," id. at § 1401(b)(1), meaning that the amount was no longer subject to dispute by the defendants.

Courts have uniformly held that by failing to arbitrate, an employer waives any defenses to withdrawal liability that could have been heard before the arbitrator. See Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. BES Servs., Inc., 469 F.3d 369, 376 (4th Cir. 2006); Cent. States, Se. & Sw. Areas Pension Fund v. Midwest Motor Exp., Inc., 181 F.3d 799, 805 (7th Cir. 1999); Trustees of Colo. Pipe Indus. Pension Trust v. Howard Elec. & Mech. Inc., 909 F.2d 1379, 1385 (10th Cir. 1990); I.A.M. Nat'l Pension Fund, Plan A, A Benefits v.

Clinton Engines Corp., 825 F.2d 415, 429 (D.C. Cir. 1987). That is the case here.

Courts have explained that seemingly harsh result by noting Congress's intention to enact a broad arbitration requirement in the MPPAA. "[A]rbitration reigns supreme under the MPPAA. And the consequences of failing to arbitrate . . . are clearly enunciated by the statute." I.A.M. Nat'l Pension Fund, 825 F.2d at 422; see also Robbins v. Admiral Merchs. Motor Freight, Inc., 846 F.2d 1054, 1056 (7th Cir. 1988) ("The resounding message is that arbitration is the preferred method for resolving pension plan disputes and that failure to arbitrate will have adverse consequences.").

The defendants' make three types of arguments in response: lack of employer status, deficient notice, and laches. None carries the day for the defendants.

### A. Employer Status

The defendants argue that JTT, TTC, and Tri City were not "employers" within the meaning of the MPPAA so they could not be subject to withdrawal liability. The defendants argue that for the same reason, they could not be subject to the mandatory arbitration requirement.

Employer status is a threshold legal question that determines the applicability of the MPPAA and its

11

arbitration provision, so judicial resolution of that question is required. N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 645 (2d Cir. 2005); Galgay v. Beaverbrook Coal Co., 105 F.3d 137, 142 (3d Cir. 1997); Mason & Dixon Tank Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund, 852 F.2d 156, 167–68 (6th Cir. 1988).

However, "a number of courts have drawn a distinction between disputes over (1) whether the defendant was ever an employer obligated under the MPPAA to make payments to the plaintiff pension fund, and (2) whether the defendant ceased to have that obligation before the payments in question became due. Courts addressing this distinction have uniformly held that the former question is for the court, while the latter is for the arbitrator." N.Y. State Teamsters Conference Pension & Ret. Fund, 426 F.3d at 646 (emphasis added).

As to JTT, the dispute is over the latter: whether in 2003, JTT ceased to become an "employer" subject to withdrawal liability. JTT does not contest that, at some point previously, it was an employer under the MPPAA that contributed to the Fund pursuant to a CBA obligation. As such, JTT's employer status was subject to arbitration.

As to TTC and Tri City, whether those companies were "under common control" with JTT and should therefore be treated as a "single employer" with JTT for purposes of withdrawal liability, 29 U.S.C. § 1301(b)(1), might be a question subject to judicial resolution. But TTC and Tri City do not contest that they are businesses under common control with JTT because of their shared ownership. See 29 C.F.R. §§ 4001.2, 4001.3. As TTC and Tri City conceded at the motion hearing, their defense against withdrawal liability rises and falls with that of JTT.

### B. Notice

First, the defendants argue that they were not sufficiently notified of the MPPAA's arbitration requirement. Specifically, the defendants complain that the Fund's notice of withdrawal liability did not explain that failure to seek arbitration would cause the defendants to lose their ability to assert their defenses. The only notice that is statutorily required is notice of the amount of withdrawal liability and the schedule for liability payments. 29 U.S.C. § 1399(b)(1)(A). The Fund had no obligation to explain to the defendants the statutory consequences of their failure to seek arbitration.

Second, the defendants argue that the Fund's notice of withdrawal liability was prejudicially misleading because

13

the notice referred to the Fund's Rules and Regulations, which stated that any dispute had to be filed with the American Arbitration Association. The defendants claim that they never signed the Fund's Rules and Regulations so all that they were legally required to do under 29 C.F.R. § 4221.3(d) was to send a notice of arbitration to the Fund. Therefore, the defendants argue, the Fund's notice was prejudicially misleading by suggesting that the arbitration had to be initiated specifically with the American Arbitration Association and that the defendants would have to pay the $6,200 filing fee.

But the MPPAA provides that "[a]n arbitration proceeding under this section shall be conducted in accordance with fair and equitable procedures to be promulgated by the [Pension Benefit Guaranty Corporation]." 29 U.S.C. § 1401(a)(2). The PBGC regulations prescribe arbitration procedures but also provide that the PBGC may approve alternative arbitration procedures. 29 C.F.R. § 4221.14. One of those approved procedures is the "Multiemployer Pension Plan Arbitration Rules" by the International Foundation of Employee Benefit Plans, which provides for arbitration to be initiated by filing with the American Arbitration Association and paying the requisite fee. See 50 Fed. Reg. 38046-03 (Sept. 19, 1985) (approving

alternative procedure). Whether or not JTT ever signed on to the Fund's Rules and Regulations is beside the point because the requirement in the Rules and Regulations that arbitration be conducted through the American Arbitration Association was approved by the PBGC, as provided for by the MPPAA. Anyway, it bears pointing out that defendants never demanded arbitration in any forum.

### C.  **Laches**

The defendants raise the defense of laches and claim that the Fund's 2014 determination of withdrawal liability was untimely given that JTT ceased having an obligation to make contributions to the Fund in 2003. The First Circuit has held that "questions concerning the timeliness of a plan sponsor's demand are governed exclusively by [29 U.S.C.] § 1399(b)(1)." Giroux Bros. Transp., 73 F.3d at 3. That section requires that the Fund's notice be "[a]s soon as practicable after an employer's complete or partial withdrawal." 29 U.S.C. § 1399(b)(1). "[A]ny dispute regarding the timeliness of the Fund's demand under § 1399(b)(1) [i.e. whether it was "as soon as practicable"] is statutorily committed to arbitration in the first instance. This is no less so because it may also involve a measure of statutory interpretation." Giroux Bros. Transp.,

73 F.3d at 4; see also Vaughn v. Sexton, 975 F.2d 498, 502 (8th Cir. 1992).

### **ORDER**

The Fund's motion for summary judgment on Counts I, II, and IV (Docket No. 50) is **ALLOWED**. The Fund's motion to dismiss Counts III, V, VI, and VII is **ALLOWED**.

Parties should file proposed form of judgment by February 10, 2017.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge